IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LAURA WALSH and DANIEL WALSH,        )
Administrators of the Estate of      )
JASON WALSH, Deceased, and LAURA     )
WALSH and DANIEL WALSH, in their     )
own right,                           )
                                     )
                Plaintiffs,          )
                                     )
        vs.                          )    Civil Action No. 05-286
                                     )
MICHAEL G. CHEZ, M.D., and AUTISM    )
AND EPILEPSY SPECIALTY SERVICES      )
OF ILLINOIS,                         )
                                     )
                Defendants.          )


MEMORANDUM OPINION

BLOCH, District J.

        Presently before the Court is Defendants' "12(b)(2) Motion

to Dismiss or in the Alternative Motion to Transfer Pursuant to

28 U.S.C. § 1406(a)."  For the reasons discussed below, the Court

finds that it can exercise specific jurisdiction over Defendants,

that venue is proper in this district, and that transfer of this

case is therefore unwarranted.  Accordingly, the Court will deny

Defendants' Motion.

I.      Background

        Plaintiff Laura Walsh and Plaintiff Daniel Walsh

(collectively "Plaintiffs") filed a Complaint in the present case

on behalf of themselves and as administrators of the estate of

1

Jason Walsh, who is deceased.[1]  The Defendants in this case are Dr. Michael G. Chez, M.D., an Illinois resident with a medical practice in that state, and Autism and Epilepsy Specialty Services of Illinois ("AESS"), a limited liability corporation with its principal place of business in the State of Illinois. Plaintiffs assert that Dr. Chez, at all times relevant, was acting as an employee or agent of AESS.

Plaintiffs are the mother and father, respectively, of Jason Walsh, who died at the age of five on May 9, 2003.  Jason was born on July 9, 1997, and was diagnosed at an early age with autism-spectrum disorder ("ASD").  After trying various treatment methods for Jason's ASD, Plaintiffs contacted Defendant Dr. Chez because he was a neurologist specializing in autism and epilepsy. The parties agree that Dr. Chez evaluated Jason on January 8, 2003.  Plaintiffs allege that Dr. Chez decided to treat Jason with four weeks of an oral daily dosage of 50 mgs of prednisone, a steroid, but that Dr. Chez apparently intended to switch Jason to "pulse" steroid therapy by cutting the dosage to 50 mgs of prednisone two days a week after this initial four-week period. Plaintiffs claim that Dr. Chez agreed to manage Jason's steroid regimen and that they expected to receive additional instructions about Jason's therapy after they returned to Pennsylvania.

---

[1]     Plaintiffs, at all relevant times, were residents of Allegheny County, which is within the Western District of Pennsylvania.

Plaintiffs returned to Pennsylvania, and Jason started
taking daily doses of 50 mgs of prednisone on January 9, 2003.
However, Plaintiffs allege that, contrary to the initial weaning
plan, Dr. Chez did not switch Jason to pulse dosage after four
weeks.   Instead, they allege that, on February 11, 2003, more
than four weeks after the commencement of Jason's treatment,
Laura Walsh was advised by Dr. Chez via telephone to continue
Jason on the same daily dose of prednisone (50 mg).   They claim
that on February 24, 2003, after Jason had been taking steroids
daily for approximately seven weeks, Laura Walsh again contacted
Dr. Chez, who, at that time, reduced Jason's dosage to pulse
levels of 50 mgs of prednisone twice a week.   The Walshes
complied with his instructions.

Plaintiffs claim that on March 3, 2003, Jason became ill
and, over the next week, was diagnosed with a number of medical
problems, including adrenal and respiratory conditions.   Despite
medical efforts, Jason died on May 9.   They claim that Jason's
death was the direct and proximate result of Dr. Chez's
negligence and brought claims against Defendants in this Court
for wrongful death, survivorship, and emotional distress relating
to Dr. Chez's treatment of Jason.

Defendants move to dismiss this case for lack of personal
jurisdiction, asserting that they do not have constitutionally
sufficient minimum contacts with the Commonwealth of Pennsylvania

3

to be subject to the jurisdiction of this Court. In the alternative, they argue that subjecting them to the jurisdiction of this Court would offend traditional notions of fair play and substantial justice. In so asserting, Defendants argue that neither Defendant has ever been licensed to practice, nor practiced, medicine in Pennsylvania, that neither maintains any affiliation or has any privileges with any Pennsylvania hospital, that neither maintains any reciprocal relationships with any physicians in Pennsylvania, and that neither advertises or solicits business in Pennsylvania.

Defendants further assert that Dr. Chez treated Jason at his office in Illinois on January 8, 2003 only after Plaintiffs sought out his specialized services. They claim that it was during that visit that Dr. Chez gave Plaintiffs the treatment program they were to follow, prescribed medication, and ordered blood work, emphasizing that Dr. Chez, at that time, advised Plaintiffs as to how Jason was to be weaned from the prednisone. They assert that Dr. Chez did not instruct Plaintiffs to have the prescription filled in Pennsylvania and that Plaintiffs were to have a local physician monitor Jason's medication. While they acknowledge that Dr. Chez made and received subsequent telephone calls from Plaintiffs, they allege that he merely reiterated his earlier instructions regarding treatment. They also assert that Plaintiffs were never billed for any of these calls. They argue

4

that if any malpractice occurred in this case, it was the
diagnosis and prescription which occurred in Illinois.

Plaintiffs disagree, contending that Defendants' contacts
with Pennsylvania are sufficient to warrant jurisdiction in this
forum.

II.  Defendants' Motion to Dismiss

A.  Personal Jurisdiction

Under Federal Rule of Civil Procedure 4(e), a federal
district court may exercise personal jurisdiction over non-
resident defendants to the extent allowed by the law of the state
in which the court sits.[2]  See Mellon Bank (East) PSFS, N.A. v.
Farino, 960 F.2d 1217, 1221 (3d Cir. 1992); Mesalic v. Fiberfloat
Corp., 897 F.2d 696, 698 (3d Cir. 1990).  Pennsylvania's Long Arm
Statute, 42 Pa.C.S.A. §5322(b), permits the exercise of
jurisdiction over non-residents "to the fullest extent allowed

---

[2]     Rule 4(e) provides in relevant part:

> Unless otherwise provided by federal
> law, service upon an individual from
> whom a waiver has not been obtained
> and filed, other than an infant or
> incompetent person, may be affected
> in any judicial district of the
> United States:
>     (1) pursuant to the law of the
> state in which the district court is
> located....

Fed. R. Civ. P. 4(e)(1).

under the Constitution of the United States."[3]   42 Pa.C.S.A. §

5322(b); Renner v. Lanard Toys, Ltd., 33 F.3d 277, 279 (3d Cir.

1984); Farino, 960 F.2d at 1221; Dollar Savings Bank v. First

Security Bank of Utah, N.A., 746 F.2d 208, 211 (3d Cir. 1984)

("The reach of the statute is coextensive with the due process

clause [of the Fourteenth Amendment] of the federal

Constitution."); Kubik v. Letteri, 614 A.2d 1110, 1113-14 (Pa.

1992).   Thus, this Court may exercise personal jurisdiction over

Defendants provided that the exercise of such jurisdiction

comports with the due process restrictions of the United States

Constitution.

    Once challenged, the burden is on the plaintiff to prove

personal jurisdiction.   See Grand Entertainment Group, Ltd. v.

Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993); Farino,

960 F.2d at 1223.   Prior to trial, a plaintiff need only make a

prima facie showing of jurisdiction, and courts must take the

plaintiff's allegations as true and construe all disputed facts

---

[3]         Section 5322(b) provides in relevant part:

            [T]he jurisdiction of the tribunals
            of this Commonwealth shall extend to
            all persons who are not within the
            scope of §5301 (relating to persons)
            to the fullest extent allowed under
            the Constitution of the United States and may be
            based on the most minimum contact with this
            Commonwealth allowed under the Constitution of the
            United States.

42 Pa.C.S.A. § 5322(b).

6

in favor of the plaintiff for purposes of the analysis. See Carteret Savings Bank v. Shushan, 954 F.2d 141, 142 n. 1 (3d Cir.), cert. denied sub nom., 506 U.S. 817 (1992); Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002). If the plaintiff makes a prima facie case for the exercise of personal jurisdiction, then the defendant must show that the exercise of jurisdiction is unconstitutional by "present[ing] a compelling case" that the exercise of personal jurisdiction would be unreasonable based upon fairness factors. Farino, 960 F.2d at 1226 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). These fairness factors include: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. Burger King, 471 U.S. at 477 (quoting Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)); Farino, 960 F.2d at 1222.

In this case, Plaintiffs assert that Defendants' contacts with Pennsylvania are sufficient to establish "specific jurisdiction" over Defendants.[4] "Specific" jurisdiction involves

---

[4]     Due process may also be satisfied by "general" jurisdiction, which involves the exercise of personal jurisdiction over a defendant in a lawsuit that does not arise

7

an assertion of personal jurisdiction over a defendant in a
lawsuit "arising out of or related to" the defendant's contacts
with the forum state.  Helicopteros Nacionales de Columbia, S.A.
v. Hall, 466 U.S. 408, 414 n. 8 (1984); Mellon Bank (East), PSFS,
N.A. v. DiVeronica Brothers, Inc., 983 F.2d 551, 554 (3d Cir.
1993).  The test for determining whether specific jurisdiction
exists has two parts.  First, the Court must consider whether
Defendants purposely established minimum contacts with
Pennsylvania "such that [Defendants] should reasonably anticipate
being haled into Court [here]."  Worldwide Volkswagen, 444 U.S.
at 297; North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d
687, 690 (3d Cir.) (per curiam), cert. denied, 498 U.S. 847
(1990).  If minimum contacts are present, then the Court must
determine whether the exercise of personal jurisdiction on the
defendant accords with the notions of "fair play and substantial
justice."  Burger King, 471 U.S. at 476; Mesalic, 897 F.2d at 701
(quoting International Shoe Co. v. Washington, 326 U.S. 310, 316
(1945)).

## 1.   Minimum contacts

In order for a court to assert personal jurisdiction, there
must be "some act by which the defendant purposely avails itself

---

out of or relate to the defendant's contacts with the forum
state.  The parties agree, as does the Court, that general
jurisdiction is not applicable in this case.

of the privilege of conducting business within the forum State, thus invoking the benefits and protections of its laws." Farino, 960 F.2d at 1221 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). These acts must be "such that [the defendant] should reasonably anticipate being haled into court [in the forum State]." Worldwide Volkswagen, 444 U.S. at 297. This test is intended to protect a non-resident defendant from jurisdiction based solely on random, fortuitous, or attenuated contacts, or the unilateral activity of another party or third person. Burger King, 471 U.S. at 475 (citations omitted). In determining whether specific jurisdiction exists, this Court should take into account "the relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204 (1977).

Here, Defendants assert that neither Defendant has ever been licensed to practice, nor practiced, medicine in Pennsylvania, that neither maintains any affiliation or has any privileges with any Pennsylvania hospital, that neither maintains any reciprocal relationships with any physicians in Pennsylvania, and that neither advertises or solicits business in Pennsylvania. See Affidavit of Michael G. Chez, M.D. dated April 7, 2005 ("Chez Aff.") at ¶¶ 3-10. Plaintiffs do not dispute these facts. However, there are significant factual disputes between the parties as to the nature of Dr. Chez's treatment of Jason.

9

Defendants assert that Dr. Chez treated Jason exclusively in Illinois. They claim that it was during Plaintiffs' January 8, 2003 visit that Dr. Chez gave Plaintiffs the prednisone treatment program they were to follow, prescribed medication, and ordered blood work. See Chez Aff. at ¶¶ 11-12; Affidavit of Michael G. Chez, M.D. dated May 12, 2005 ("Supp. Chez Aff.") at ¶¶ 4-5. They argue that Dr. Chez, at that time, advised Plaintiffs as to how Jason was to be weaned from the prednisone. See Supp. Chez Aff. at ¶ 4. They assert that Dr. Chez did not instruct Plaintiffs to have the prescription filled in Pennsylvania and that Plaintiffs were to have a local physician monitor Jason's medication. See Chez Aff. at ¶ 13; Supp. Chez Aff. at ¶ 7. They allege that Dr. Chez merely reiterated his earlier instructions regarding treatment in subsequent telephone calls with Plaintiffs. See Supp. Chez Aff. at ¶ 8. They also assert that Plaintiffs were never billed for any of these calls. Chez Aff. at ¶ 16. They argue that if any malpractice occurred in this case, it was the diagnosis and prescription which occurred in Illinois.

Plaintiffs claim that Dr. Chez agreed to monitor Jason's prednisone therapy after Plaintiffs returned to Pennsylvania with Jason and that they expected to receive additional instructions from Dr. Chez upon returning to Pennsylvania. See Complaint ("Compl.") at ¶ 15; Affidavit of Laura Walsh ("Walsh Aff.") at ¶

10

5.   Further, they allege that Dr. Chez ordered Jason to undergo blood tests after he had returned to Pennsylvania and for the blood tests to be sent to him for analysis.  See Walsh Aff. at ¶ 7.  Finally, Plaintiffs allege that, although Dr. Chez initially intended to switch Jason to pulse steroid therapy after four weeks, on a February 11, 2003 telephone call with Laura Walsh at her Pennsylvania home, more than four weeks after the commencement of Jason's treatment, he advised Plaintiffs to continue Jason on the same dose of prednisone rather than to begin pulse therapy.  They claim that it was not until seven weeks after Jason began his treatment that he was switched to pulse dosage.  See Compl. at ¶¶ 18-19; Walsh Aff. at ¶ 6; Affidavit of Jon R. Perry, Esquire at 19-21, 24.

As discussed above, this Court must take all of Plaintiffs' allegations as true and construe all disputed facts in favor of Plaintiffs.  Here, Plaintiffs have supported their allegations with affidavits and other record evidence.  Taking all of Plaintiffs' allegations as true and construing all disputed facts in favor of Plaintiffs, the Court finds that Defendants had sufficient contact with Pennsylvania to establish a prima facie case of jurisdiction.

As Plaintiffs note in their brief, a critical aspect of their malpractice claim regards the weaning of Jason from daily dosages of prednisone to pulse dosages.  They claim that Dr. Chez

11

altered the original plan of switching to pulse therapy after
four weeks, and, instead, advised Plaintiffs by telephone on
February 11, 2003, to continue daily dosages. Although
Defendants argue generally that Dr. Chez did nothing but "simply
reiterat[e] the instructions that he had given to Daniel and
Laura Walsh when they were present in his office in Illinois,"
they do not dispute that there was a change as to when Jason was
to be weaned from daily dosages of prednisone that occurred after
Plaintiffs had returned to Pennsylvania.[5] In fact, in their
Pretrial Statement, they acknowledge this and set forth an
explanation as to why Dr. Chez made this change. See Defendants'
Pretrial Statement at 3.

Thus, contrary to Defendants' contentions, Plaintiffs here
do not merely claim that Dr. Chez improperly diagnosed Jason and
prescribed treatment during his visit to Illinois; they claim
that Dr. Chez provided medical advice and diagnosis, particularly
a new weaning plan, over the telephone while Plaintiffs were in
Pennsylvania. This is not a case where the alleged tortious act
was committed in Illinois while the result of that act was
carried to Pennsylvania. Here, at least one of the alleged
tortious acts was committed in Pennsylvania.

---

[5] In any event, as explained above, the Court must
construe the facts in Plaintiffs' favor.

12

Courts have generally held that jurisdiction is proper where, as here, a doctor provides medical advice or diagnosis via telephone while the patient is in that state, even if the initial treatment and/or diagnosis was in another state. In Ray v. Heilman, 660 F. Supp. 122 (D. Kan. 1987), the defendant physician prescribed medication for the plaintiff, a Kansas resident, in his Missouri office. The defendant further arranged for the plaintiff to submit to blood tests in Kansas. While in Kansas, plaintiff or his wife had six telephone conversations with the defendant, the purpose of which was to inform him of the plaintiff's physical status and to seek the defendant's medical advice. The defendant gave instructions and orders to the plaintiff and/or his wife. The plaintiff's wife eventually sued on her husband's behalf for medical malpractice based on this treatment and advice. The Kansas District Court found that these contacts were sufficient to establish personal jurisdiction, despite the fact that the defendant was licensed to practice medicine solely in Missouri.

Likewise, in McGee v. Riekhof, 442 F. Supp. 1276 (D. Mon. 1978), the defendant physician performed surgery in Utah on the plaintiff, a Montana resident, to repair the plaintiff's retinal detachment. After the plaintiff returned to Montana, the defendant advised him to return to Utah within two weeks for post-surgical treatment and requested that his wife call and

13

report on the plaintiff's progress each week, which she did. During the second such phone conversation, the defendant advised the plaintiff's wife that the plaintiff could return to work. On his first day back to work, the plaintiff suffered a retinal detachment. The plaintiff sued for malpractice. Despite the defendant's arguments that he was not licenced to practice in Montana, that he did not seek patients in Montana, and that he had no business interests in Montana, the court found that jurisdiction was proper in the Montana District Court. In so finding, the court emphasized that the alleged negligent act of advising the plaintiff to return to work prematurely occurred in Montana, since the plaintiff was in Montana when this diagnosis was rendered. See id. at 1278. The court found, essentially, that the defendant had provided a new diagnosis via telephone while the plaintiff was in Montana. See id. at 1279.

Here, as in those cases, Dr. Chez did not merely treat Jason Walsh in Illinois, he also rendered additional medical advice and/or diagnosis via telephone after the Walshes had returned to Pennsylvania. Indeed, a primary allegation in Plaintiffs' case is that the change in the weaning instructions was negligent, and it is undisputed that Dr. Chez changed these instructions via telephone after Plaintiffs returned to Pennsylvania.

Further, courts have held that an agreement by a physician in one state to monitor the treatment of a patient in another

state can give rise to jurisdiction in that other state. In
Bullion v. Gillespie, 895 F.2d 213 (5th Cir. 1990), the
plaintiff, a Texas resident, was initially treated by the
defendant physician in California. While in California, the
plaintiff was invited to participate in an experimental steroid
treatment program. The program entailed the defendant sending
the drug angiostat to the plaintiff in Texas through the mail.
The plaintiff's local doctor was to supervise the plaintiff's
progress and report his findings to the defendant in California.
The plaintiff eventually sued the defendant for malpractice in
Texas, and the defendant moved to dismiss the case for lack of
personal jurisdiction, arguing that she was not licensed to
practice medicine in Texas, that she did not advertise or solicit
business in Texas, that she was merely a consultant for the local
doctor, and that she did not profit from her relationship with
the plaintiff. The district court agreed and dismissed the case.

The Fifth Circuit Court of Appeals, though, reversed,
holding that the district court had improperly dismissed the case
and that the plaintiff had established a prima facie case for
personal jurisdiction. In so holding, the court relied upon the
fact that the defendant had shipped drugs to the plaintiff, that
the plaintiff believed that she was the defendant's patient for
purposes of the treatment program, that the defendant received
compensation for her services, and that she maintained regular

telephone contact with the plaintiff's local doctor.  See id. at
217.

     While not directly on point, this case demonstrates that an
agreement to monitor a patient's treatment in another state can
subject a physician to the jurisdiction of that state.  Here,
construing the facts in Plaintiffs' favor, Dr. Chez agreed to
monitor Jason's treatment after Plaintiffs returned to
Pennsylvania and Plaintiffs believed that Dr. Chez would continue
to provide advice regarding the treatment.  Compl. at ¶ 15; Walsh
Aff. at ¶ 5.  He was in regular contact with Plaintiffs and
occasionally ordered Jason to undergo blood tests while in
Pennsylvania.  Compl. at ¶¶ 15-19; Walsh Aff. at ¶¶ 6-7.
Although Dr. Chez did not ship drugs to Plaintiffs, he did, as
discussed above, change Jason's treatment plan regarding the
prescribed prednisone.  Coupling the changed diagnosis with the
agreement to monitor Jason's treatment makes it clear that this
Court has jurisdiction over Defendants in this case.

     This case is therefore like Ray, McGee, and Bullion, and
unlike cases such as Wright v. Yackley, 459 F.2d 287 (9th Cir.
1972).  In that case, the plaintiff, a South Dakota resident, was
treated by the defendant and given a prescription for unlimited
refills in South Dakota.  The plaintiff subsequently moved to
Idaho and requested a copy of the prescription from the
defendant, who complied without altering the original

prescription.  The plaintiff allegedly was injured from use of
the prescribed drug.  The Ninth Circuit Court of Appeals upheld
the Idaho district court's dismissal of the case for lack of
personal jurisdiction, holding in the process that the
defendant's mailing of the prescription to Idaho did not
constitute a new prescription and that it was not diagnosis and
treatment by mail, but merely confirmation of the original
diagnosis and prescription.  See id. at 288-89.

In the present case, as discussed above, there was a new
diagnosis – the change in the weaning schedule.  This case is
therefore not like Wright; in fact, the court in Wright
specifically acknowledged the difference between the facts in
that case and those in cases such as the present one:

> The balance of factors involved in a due process
> determination might be different if a doctor could be said
> to have treated an out-of-state patient by mail or to have
> provided a new prescription or diagnosis in such fashion.
> In that event, the forum state's interest in deterring such
> interstate medical service would surely be great.  Here,
> however, the mailing of the copies was simply reflective of,
> and indeed a part of, the earlier treatment and
> prescription.

Id. at 289 n.4.

Moreover, this case is not, as Defendants argue, like cases
involving informational communications in furtherance of a
contract between a resident and a non-resident.  Defendants
correctly point out that the Third Circuit has held that such
informational communications, including telephone calls, do not

17

generally establish the purposeful activity necessary for a valid assertion of jurisdiction. See Verotex Certainteed Corp. v. Consolidated Fiber Glass Products Co., 75 F.3d 147, 152 (3d Cir. 1996); Sunbelt Corp. v. Noble, Denton & Assoc., Inc., 5 F.3d 28, 32 (3d Cir. 1993). Here, the telephone communications at issue were not merely in furtherance of a contract; Plaintiffs allege that it was those very communications that form the basis of Defendants' malpractice. Plaintiffs do not allege simply that post-treatment phone calls between them and Dr. Chez establish jurisdiction; they allege that medical advice rendered during those phone calls and an overall agreement to monitor Jason's treatment establish jurisdiction.

In sum, the facts are sufficient to establish a prima facie case of jurisdiction.

## 2. Traditional Notions of Fair Play and Substantial Justice

After determining that a non-resident defendant has sufficient minimum contacts with the forum, the Court must inquire as to "whether the assertion of personal jurisdiction would comport with fair play and substantial justice." See, e.g., Farino, 960 F.2d at 1222. In making this determination, courts should consider the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the

interstate judicial system's interest in obtaining the most
efficient resolution of controversies, and the shared interest of
the several States in furthering fundamental substantive social
policies.  See Worldwide Volkswagen, 444 U.S. at 292.

In the present case, Defendants assert that this Court's
exercise of personal jurisdiction would violate their
constitutional due process rights because it would be unfair for
physicians who specialize in an area of medicine to be subject to
suit in every jurisdiction where one of their patients resides.
They further argue that Pennsylvania has an interest in
protecting the rights of citizens to seek out medical care in
specialties that do not exist in the Commonwealth.

Having reviewed the evidence, this Court finds that
exercising personal jurisdiction over Defendants would not offend
their due process rights.  Contrary to Defendants' argument, they
are not subject to suit in this district merely because
Plaintiffs reside here.  As discussed at length above, it is
Defendants' monitoring and rendering of medical advice to
Plaintiffs while Plaintiffs were in Pennsylvania which provides
the constitutionally sufficient contacts in this case.  Moreover,
Pennsylvania has a substantial interest in protecting its
citizens and providing a forum for relief when out of state
physicians render legal care and/or advice in Pennsylvania.

19

Under these circumstances, Defendants should have reasonably expected that they could be "haled into court" in Pennsylvania.

In sum, this Court concludes that it is neither unfair nor unjust to force Defendants to litigate Plaintiffs' claims in this forum. Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction will be denied.

B.   Venue

Defendants argue that even if they are subject to personal jurisdiction in Pennsylvania, the Court should transfer this action to the appropriate district court in Illinois pursuant to 28 U.S.C. § 1406(a). Section 1406(a) provides that a district court may dismiss or transfer a "case laying venue in the wrong division or district." However, Section 1406(a) is inapplicable here because the Court finds that venue is proper under 28 U.S.C. § 1391(a).

Under Section 1391(a), when there is diversity of parties, a suit may be brought in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Defendants argue, as they did above, that the cause of action brought by Plaintiffs arose as a result of actions which occurred in Illinois. However, as discussed above, this is not so, since a substantial part of the claim arose out of the medical monitoring and advice provided by Dr. Chez to

20

Plaintiffs while the Plaintiffs were in the Western District of Pennsylvania.

Accordingly, venue is proper, and Defendant's motion to transfer the case under Section 1406(a) is denied.

s/Alan N. Bloch
United States District Judge

Date:      March 6, 2006

cc/ecf:   Jon R. Perry, Esquire
          James A. Wood, Esquire

21