IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LAURA WALSH and DANIEL WALSH,           )
Administrators of the estate of JASON   )
WALSH, deceased, and in their own right,)
       Plaintiffs,                      )
                                        )
       vs.                              )   Civil Action No. 05-286
                                        )
MICHAEL G. CHEZ, M.D. and AUTISM        )
AND EPILEPSY SPECIALTY SERVICES         )
OF ILLINOIS,                            )
       Defendants.                      )

MEMORANDUM OPINION

Presently before this Court for disposition is a motion to transfer venue, brought by the Plaintiffs. The motion seeks transfer of this action to the United States District Court for the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1404(a).

Plaintiffs, Laura Walsh and Daniel Walsh, as administrators of the estate of Jason Walsh, deceased, and in their own right, have brought this medical malpractice action against Defendants, Michael G. Chez, M.D. and Autism and Epilepsy Specialty Services of Illinois (AESS), arising out of the death, on May 9, 2003, of their son Jason, who was then five years old. Jason was diagnosed at an early age with autism-spectrum disorder and Plaintiffs contacted Dr. Chez, an Illinois resident and employee of AESS, because he was a neurologist specializing in autism and epilepsy. The parties agree that Dr. Chez evaluated Jason in Illinois on January 8, 2003. Plaintiffs allege that he decided to treat Jason with four weeks of an oral daily dosage of 50 milligrams of prednisone, a steroid, but that he apparently intended to switch Jason to "pulse" steroid therapy by cutting his dosage to 50 milligrams two days a week thereafter. Plaintiffs

allege that Dr. Chez agreed to manage Jason's steroid regimen and that they expected to receive additional instructions about Jason's therapy after they returned to Pennsylvania.

Plaintiffs allege that, on February 11, 2003, more than four weeks after the commencement of Jason's treatment, Laura Walsh was advised by Dr. Chez on the telephone to continue Jason on the same daily dosage of 50 milligrams of prednisone. They further claim that, on February 24, 2003, after Jason had been taking steroids daily for approximately seven weeks, Laura Walsh again contacted Dr. Chez, who, at that time, reduced Jason's dosage to pulse levels of 50 milligrams twice a week. The Walshes complied with his instructions.

Plaintiffs claim that on March 3, 2003, Jason became ill and, over the next week, was diagnosed with a number of medical problems, including adrenal and respiratory conditions. Despite medical efforts, Jason died on May 9. They claim that his death was the direct and proximate result of Dr. Chez's negligence and brought claims in this Court against Defendants for wrongful death, survivorship and emotional distress relating to Dr. Chez's treatment of Jason.

Procedural History

Plaintiffs filed this action on March 3, 2005. On April 11, 2005, Defendants filed a motion to dismiss or transfer for lack of personal jurisdiction and improper venue pursuant to Federal Rule of Civil Procedure 12(b)(2) and 28 U.S.C. § 1406(a) (Docket No. 3). On March 6, 2006, this Court entered a memorandum order denying the motion (Docket No. 32). In an opinion filed that same date, the Court noted "significant factual disputes between the parties as to the nature of Dr. Chez's treatment of Jason." (Docket No. 31 at 9.) As required under the standard of review, the Court construed all of these factual disputes in Plaintiffs' favor and determined that they had established a prima facie showing of personal jurisdiction.

On April 27, 2006, an order of reference was entered, referring the case to the undersigned for all further proceedings and the entry of judgment in accordance with Federal Rule of Civil Procedure 73 and the consent of the parties (Docket No. 37). At a status conference on June 13, 2006, trial was scheduled for the week of September 25, 2006 and the issues of personal jurisdiction, venue and transfer were discussed. Specifically, the Court noted – and Plaintiffs' counsel acknowledged – that, if the Plaintiffs were to prevail at trial and the case were appealed, Defendants could revisit the issue of personal jurisdiction. The Court of Appeals might find that personal jurisdiction over the Defendants could not be exercised by this Court and might dismiss the case or transfer it to the United States District Court for the Northern District of Illinois. Plaintiffs' counsel agreed to present to his clients the possibility of voluntarily transferring the case to the Northern District of Illinois. Defendants' counsel indicated that he did not see why Dr. Chez would have any objection.

On August 9, 2006, Plaintiffs filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a) (Docket No. 43). The motion was based on their concern about the Court of Appeals reversing this Court's preliminary analysis of the personal jurisdiction issue. In particular, they argued that the interest of justice would be served by having one trial in a forum in which personal jurisdiction could unquestionably be exercised over the Defendants.

On August 18, 2006, Defendants filed a response, in which they indicated that they opposed Plaintiffs' motion to transfer. Dr. Chez stated in an affidavit that he wished to have the case resolved on the scheduled date certain, that he had arranged his schedule and that of his witnesses to be available for trial as scheduled and that he did not wish to have the trial delayed, possibly for at least a year, if the case were to be transferred to another court. (Chez Aff. III ¶¶ 5-

8.)[1]

Defendants further contended that Plaintiffs' argument that they would be left without a remedy should the Court of Appeals reverse the order of Court denying the motion to dismiss or transfer for lack of personal jurisdiction and improper venue is flawed because the Court of Appeals would transfer the case to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1631, as a court "in which the action ... could have been brought."

On August 22, 2006, an order was entered, scheduling a hearing for September 5, 2006 to resolve the motion to transfer and to reach a final resolution of the issue of whether Plaintiffs could establish by a preponderance of the evidence that personal jurisdiction could be asserted over the Defendants, which was raised by implication in Plaintiffs' motion to transfer and was clearly still at issue in the case.  On September 5, 2006, counsel for the parties arrived, but no witnesses were present to offer testimony.

Plaintiffs' counsel stated on the record that his clients have abandoned one of their two theories of liability and that only the issue of Dr. Chez's weaning of Jason from prednisone remains in the case.  He further stated that, as to this issue, there exist far fewer contacts with this forum than he had originally argued and that this made for an even weaker case for establishing personal jurisdiction over the Defendants.

Upon questioning by the Court, Plaintiffs' counsel conceded that he was abandoning his opposition to Defendants' original motion to dismiss or transfer for lack of personal jurisdiction. He argued that having one trial in a forum that unquestionably possesses personal jurisdiction

---

[1]     Docket No. 46 Ex. A.

over the Defendants is clearly in the interest of justice; whereas having a trial in this Court, only to face the possibility that the Court of Appeals might transfer the case to another forum for a second trial, would not be in the interest of justice.

      Defendants' counsel represented that Dr. Chez would stand by the statements he made in his affidavits filed in support of his motion to dismiss or transfer for lack of personal jurisdiction and improper venue.  In those affidavits, Dr. Chez stated that: 1) he saw Jason only once, in his office in Illinois on January 8, 2003, and discussed the issue of weaning him from prednisone with his parents at that time; 2) he gave Laura and Daniel Walsh orders for lab work at that time; 3) he advised Laura and Daniel Walsh that they had to have a local physician to monitor Jason's medication and be available in emergency situations and that they would need to come back to Illinois every two to three months if they wanted Jason to be his patient; 4) he provided no additional treatment during any subsequent phone call with them, for which he did not bill them; and 5) physicians at Children's Hospital of Pittsburgh contacted him to obtain background information about Jason and he did not render any treatment or provide any advice or recommendations to these physicians.  (Chez Aff. I ¶¶ 11-16; Chez Aff. II ¶¶ 4-8).[2]

      Defendants' counsel argued that only Plaintiffs' initial choice of venue is entitled to deference unless there has been a change of circumstances and their abandonment of one theory of liability does not constitute such a change of circumstances.  He also contended that Dr. Chez would be inconvenienced by having the case transferred, because he had cleared his schedule for the scheduled trial dates and he did not wish to have the trial delayed, possibly for at least a year, if the case were to be transferred to another court.

---

[2]    Docket No. 3 Ex. A; Docket No. 11 Ex. A.

Transfer of Venue

Section 1404 provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

The evidence demonstrates that Dr. Chez's office at the time he saw Jason was in Lake Bluff, Illinois, a suburb of Chicago. (Chez Aff. II ¶ 7.) A federal court in Illinois could exercise personal jurisdiction over Defendants because Dr. Chez is a citizen of Illinois and AESS has its principal place of business in that state. The District Court for the Northern District of Illinois, Eastern Division would be an appropriate venue because both Defendants reside there and also because a substantial part of the events giving rise to the claims occurred there. 28 U.S.C. § 1391(a)(1-2).

Federal court is held in Chicago for the United States District Court for the Northern District of Illinois, Eastern Division. 28 U.S.C. § 93(a)(1). Therefore, the Northern District of Illinois, Eastern Division, is a federal court where this action might have been brought.

Plaintiffs have requested that this case be transferred because they wish to avoid the possibility of prevailing at trial only to have the Court of Appeals determine subsequently that personal jurisdiction in this Court was lacking. To the extent that the factor of convenience to them in litigating the case in Pennsylvania might be an issue, they have clearly waived it. Similarly, Dr. Chez appears to have waived the convenience of having the trial in his home state by opposing Plaintiffs' motion to transfer. Thus, the factor of the convenience of the parties weighs neither in favor of nor against transfer.

Defendants' counsel's argument that only Plaintiffs' original choice of forum is entitled to deference, supported by citations to district court cases from outside the Third Circuit, is irrelevant for two reasons: 1) the Court is not giving deference to Plaintiffs' choice of forum as expressed in the motion to transfer, but is instead weighing it as one of the factors in ruling on the motion; and 2) if Plaintiffs were to be held to their original choice of forum, Defendants would similarly be held to their original preference to dismiss or transfer the case to the Northern District of Illinois, a position counsel expressly refused to abandon at the hearing.  Counsel also provided no support for his illogical argument that Plaintiffs have moved for a transfer as a matter of convenience to them.  Rather, the record supports the conclusion that their motion is based on their legitimate concern about the personal jurisdiction issue.

Dr. Chez has indicated that he and his witnesses are prepared to go to trial in this Court on the date scheduled for trial.  The witness lists for both Plaintiffs and Defendants indicates that many of the witness reside in this district.  See Pls.' Pretrial Statement (Docket No. 16) at 5-6; Defs.' Pretrial Statement (Docket No. 17) at 6-8.  However, the convenience of the witnesses is only a factor to the extent that the witnesses may actually be unavailable for trial in one of the fora.  Dr. Chez has not argued that his witnesses would actually be unavailable for trial in the Northern District of Illinois.  Thus, the factor of convenience to the witnesses does not weigh against transfer of this action.

The third factor is the "interest of justice."  The parties agree that, should Plaintiffs prevail at trial and should Dr. Chez raise the issue of personal jurisdiction on appeal, the Court of Appeals could reverse this Court's initial determination that they had made a prima facie

showing of personal jurisdiction.[3] Plaintiffs argue that, if the case were to be dismissed, they would then be unable to refile the case in a court in Illinois because the statute of limitations would have expired. They would be without a forum in which to assert their rights. Thus, it would be in the interest of justice for the case to be transferred now to a court that would unquestionably be able to exercise personal jurisdiction over Dr. Chez and to a forum that would unquestionably be proper.

Defendants respond that, even if the Court of Appeals were to reverse this Court's ruling on the personal jurisdiction issue, it would not dismiss the case, but would instead transfer it to the Northern District of Illinois pursuant to 28 U.S.C. § 1631. Island Insteel Sys., Inc. Waters, 296 F.3d 200, 218 & n.9 (3d Cir. 2002). This would mean that the case would have to be tried a second time. Although this result is not as harsh as the outright dismissal of Plaintiffs' case with no opportunity to refile, it still would not be in the interest of justice for this to occur.

The Court of Appeals has held that, in ruling on § 1404(a) motions, courts have not limited their consideration to the convenience of parties, witnesses, or interests of justice but have considered many variants of the private and public interests protected by the language of § 1404(a):

---

[3] Although the Court determined that personal jurisdiction could be exercised over Dr. Chez based upon the telephone call during which he allegedly changed the weaning schedule, a number of other courts have found personal jurisdiction lacking under these circumstances. See Vance v. Molina, 28 P.2d 570 (Okla. 2001) (no personal jurisdiction over Texas doctor whose discussions with decedent over the telephone in Oklahoma were ancillary to the surgeries he performed on her in Texas); Prince v. Urban, 57 Cal. Rptr. 2d 181 (1996) (no personal jurisdiction over Illinois doctor who had numerous telephone calls with California patient subsequent to treatment in Illinois); Bradley v. Mayo Foundation, 1999 WL 1032806 (E.D. Ky. Aug. 10, 1999) (patient treated in Minnesota could not establish personal jurisdiction over doctors or clinic based on follow-up correspondence or telephone calls to Kentucky).

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses–but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable law in diversity cases.

Jumara v. State Farm Ins. Co., 55 F.3d 873, 878-79 (3d Cir. 1995) (citations omitted).

In this case, as noted above, it is extremely uncertain that the claims "arose" in Pennsylvania. Rather, the facts and law support the conclusion that the claims arose in Illinois. Although not addressed by the parties, this fact also appears to implicate the concerns of having local controversies decided at home and the issue of the familiarity of the trial judge with the applicable law in diversity cases.

Upon weighing the factors, and particularly the outstanding issue of whether personal jurisdiction can be asserted over the Defendants in this forum, the Court concludes that the case should be transferred. For these reasons, and under these circumstances, Plaintiffs' motion to transfer this case to the Northern District of Illinois, Eastern Division will be granted. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAURA WALSH and DANIEL WALSH, Administrators of the estate of JASON WALSH, deceased and in their own right,<br>　　　　Plaintiffs,<br><br>　　vs.<br><br>MICHAEL G. CHEZ, M.D. and AUTISM AND EPILEPSY SPECIALTY SERVICES OF ILLINOIS,<br>　　　　Defendants. | Civil Action No. 05-286 |

ORDER

AND NOW, THEREFORE, this 6th day of September, 2006,

IT IS HEREBY ORDERED that plaintiffs' motion to transfer this case pursuant to 28 U.S.C. § 1404(a) (Docket No. 43) is granted and this case is transferred to the United States District Court for the Northern District of Illinois, Eastern Division, forthwith.

　　　　　　　　　　　　　　　s/Robert C. Mitchell
　　　　　　　　　　　　　　　ROBERT C. MITCHELL
　　　　　　　　　　　　　　　United States Magistrate Judge